Spear, J.
It was the judgment of the circuit court that, by force of the statutes relating to taxation, it became the duty of an assig-nee for the benefit of creditors, acting under our insolvent laws, to return for taxation all moneys, the proceeds of the sale of assets of the assignor, which he might, as such assignee, have on hand, or on deposit in bank, on the day preceding the second Monday of April, and all investments in bonds, stocks, joint stock companies,- or otherwise, held by him as assignee, which, under the law, would be taxable if held by an individual, resident of the state.
That court was further of opinion that from the value of such property so to be returned the assignee could not legally deduct the sum. of the legal bona fide debts owing by his assignor at the time of making such return.
*260 The reasoning in support of these conclusions is, in substance, that it was the purpose of the statute, enacted conformably with section 2 of article 12, of the constitution, that the assignee should represent the estate of his assignor, and that the return for taxation should be made by the assignee substantially in the same manner as if the property still stood as that of the assignor; and that this purpose is expressed by the statute itself, section 2731, that ‘ ‘ all property whether real or personal in this state, and whether belonging to individuals or corporations; and all moneys, credits, etc., * * * of persons residing in this state, shall be subject to taxation, except only such as may be expressly exempted therefrom. ” No exemption existing in favor of property so held, it must be regarded as included within the language quoted. Although the statute does not seem to make taxes on personal property a lien thereon, yet it does provide that “all personal property subject to taxation shall be liable to be seized and sold for taxes.” And if the tax levied by reason of the return made by the assignee is paid by him, he could, under the provisions of section 6357, be allowed for such payment as part of the legitimate expenses of the trust; and, in default of payment, that distraint might be made by the tax collector by force of the authority above quoted. The mere fact that the assignee or trustee of an insolvent estate is not specially mentioned in section 2734, which points out who shall list personal property, is not a legislative declaration that such trustee is not bound to return personal property in his hands for taxation, because the statute says it shall be returned by the trustee for every person for whose benefit property is held in trust, and *261 this is not limited to cases where the trustee has the assets invested in some permanent form from which income or interest may be derived. The moneys so on hand receive the protection of the state and ought to pay their proportion of the taxes levied to furnish that protection. The fund does not belong to the individual creditors until the estate is settled and order of distribution made; nor does the mere fact of insolvency of the assignor put the fund in any different position with respect to the claims of creditors. If the fund represented credits, then debts might be deducted, and as the latter exceed the former there would be nothing to return; but the fund on hand is not a credit. Nor are the investments in bonds, stocks, etc., credits. Large amounts, in the aggregate, are at all times in the hands of assignees, and the legislature could not have contemplated the escape of so vast an amount of property from the burden of taxation; and, unless taxed in the hands of assignees, the property would escape, because, even if treated as belonging to the creditors, still it would not be practicable for even an honest creditor to make his return on such claims because he would have no means of knowing their value. These conclusions are supported directly by the opinion of the very able court whose judgement is here brought in review (7 O. C. C. R., 388), and by Dunlap v. Gallatin County, 15 Ill., 7. And as bearing upon the question, the following citations are given: Campbell v. Wiggins, 85 Texas, 424; Campbell v. Riviere, 22 S. W., 993; Jack v. Weiennett, 115 Ill., 105.
While recognizing the cogency of the reasoning, we have been unable to agree with this view of the law as bearing upon these eases.
*262 Por the purpose of the inquiry it may be assumed that the money in bank is as much subject to taxation as though it were in the personal possession of the assignee. Whether such of the assets as are in the form of stocks or bonds are credits within the meaning of the decisions of this court giving construction to section 2730, Revised Statutes, we do not regard it necessary to discuss.
It may be further assumed that there is no specific exemption of property in the hands of assignees from taxation, either in the statute, or in the constitution.
It is to be noted that the question is not whether the assets of the insolvent may be subjected to payment of taxes owing by him. But the question is whether or not the fund itself in the hands of the assignee is subject to taxation.
The constitutional requirement (section 2, of article (12), is that: “Laws shall be passed, taxing by a uniform rule, all moneys, credits, investments in bonds, stocks,” etc., and the statute relating to the subject is embraced in section 2730, Revised Statutes, and following.
Looking at these sections alone, it is, we concede, natural to conclude that a duty would devolve on assignees to return for taxation property in their hands, except perhaps that which might be in the form strictly of credits. But the purpose of the legislature is to be arrived at by a consideration of all the legislation bearing upon the subject, and not by a consideration of a-portion only.
Our statutes, sections 6335 to 6358, place the disposition of insolvent estates within the control of the probate court, and direct the duties of the assignee, and the procedure in the administration of the trust. ' When once acquired, the jurisdiction *263 is exclusive. Sayler v. Simpson, 45 Ohio St., 144; Clapp v. Banking Co., 50 Ohio St., 528. There is thus provided a convenient, expeditious and inexpensive tribunal for the distribution of the assets of insolvents ratably among creditors. Necessarily that court, by operation of law, upon the filing' of the instrument of assignment, acquires control of all the property and estate embraced therein, subject, of course, to all liens and just claims then existing upon the property, whether by the state or by creditors. Though the legal title is in the assignee, after his qualification, it is so only because he has qualified, and because his appointment has received the sanction of the court, and he, as well 'as all persons claiming an interest in or upon the fund, are subject to the summary jurisdiction of the court. The person named by the insolvent assign- or may not qualify; or having qualified, he may be removed and another, called a trustee, appointed ; and, in either ease, the legal title to the property . follows the order of the court, and is lodged in such person or persons as may, by the court’s order, be given its actual custody.
It-is made the duty of the assignee to convert the assigned property into money, and, at the expiration of eight months, file an account, as a step preliminary k> an order distributing the money to creditors, which is to be done without unnecessary delay, according to their respective claims and rights. The effect of the assignment is to devote the property absolutely to the satisfaction of the debts of the assignor, just as they existed at the time of the assignment, subject, necessarily, to be depleted by the expenses of the trust.
*264 The assignee has no power to create any new lien, nor to divert the property from the purpose contemplated by the law.
Provision is made for the payment by the assignee of preferred liens upon the property, if any exist, and for the payment of taxes in preference to any other claim against the assignor. The language in this regard is significant: All taxes of every description assessed against the assignor upon any personal property held by him before his assignment, shall be paid by the assignee or trustee, out of' the proceeds of the property assigned in preference to any other claims against the assignor.” Nowhere is it in terms provided that the assignee shall list the property for taxation, nor is provision made for the payment of any taxes save those existing against the assignor. This omission seems to us significant when contrasted with the duty enjoined by other sections of the statute upon other trustees. By section 2734, returns must be made of the property of every ward by his guardian, “of every estate of a deceased person, by his executor or administrator; of corporations whose assets are in the hands of receivers, by such receivers. ” It is made the duty of every executor or administrator “to apply the assets to the payment of debts in the following order: * * Fourth, public rates and taxes, and sums due the state for duties on sales at auction.” For such payments of taxes the administrator or executor is allowed in the settlement of his accounts. The provision relating to the payment of taxes by assignees is that ‘ ‘ all taxes of every description assessed against the assignor upon any personal property held by him before his assignment, shall be paid by the assignee,” etc., and if *265 we apply the familiar rule expressio unius exclusio alteriua, it would seem that those are the only taxes, payment of which may properly be included in his accounts.
The omissions referred to would seem also to suggest a distinction between the relation of an assignee to creditors of. the assignor and to the trust property held by him, and the relation sustained-by a guardian, an administrator, or a receiver of a corporation, to beneficiaries interested in the trust property, as well as to the property itself; and, we think a distinction is observable between the relation sustained by creditors of an insolvent assignor to the assigned property, and that of beneficiaries of property in charge of the other functionaries above named.
The relation of guardian to the ward is, while it lasts, a permanent one. He manages the estate for the benefit of the ward, and it is his duty to so manage as to make profit and interest for the ward. As to the property, the ward has no power over it, nor duty respecting it.
As to administrators, it is true that property in their hands is subject to the payment of the debts of the decedent, and that creditors are expected to list their claims as credits, and often it happens that the debts consume the entire assets. But usually there is in fact, as well as in contemplation, a residue going to widows and legatees or heirs, and they are not required to list for taxation any amount until it is actually received.
The duty enjoined upon receivers to list is confined to receivers of corporations. Such receivers are usually empowered to prosecute the business for the benefit of the parties interested. This carries the idea of a continuance of the business *266 as by the corporation, and its eventual surrender to the- corporation again. Receivers for partnerships, concerns whose affairs are to be wound up and dissolved, are not named. Certainly this omission is also significant. Such receivers perform duties similar, in many ways, to the duties of assignees of insolvents, and had it been intended to enjoin upon them the duty of listing property in their hands for taxation, one would suppose that the discrimination found in the statute would not have been made.
It is, however, urged that the clause of section 2734 which requires that the property of every person for whose benefit property is held in trust must be listed by the trustee, furnishes authority for requiring such listing by an assignee of an insolvent. It is true that, in a general, broad sense, an assignee is a trustee, and, in other sections of the Revised Statutes, the terms “assignee” and “trustee” are coupled, as though the words mean the same.
But it does not follow that the term “trustee” is used in this broad.sense in this clause of the statute, for equally, in the same sense, is a guardian or administrator, or a receiver, a trustee, and if the term had been intended in so broad a sense as to include assignees of insolvents, it would, also embrace the other trustees named, and the special provisions regarding them would be superfluous. We think the purpose of this clause is fully satisfied by confining its application to that large class of trusts where title and possession are placed in one for the benefit of others, in some permanent form, and from which, in general, interest income or profit, is expected to be derived.
*267 That portion, of the estate which is described, in the petition as being bonds and stocks can, we think, in fairness, hardly be included under the head of “investments in bonds, stocks,” etc., because, as said by McIlvaine, J., in Payne v. Watterson, 37 Ohio St., 125, “the common understanding is, that money invested is withdrawn from ordinary trade and active business and placed at interest for the sake of interest.” These securities are not held by the assignee as an investment for the sake of interest, but are in that form for temporary purposes only, being held subject to the order of the probate court, and may be required to be converted into money, and that money distributed at any time.
To hold that property in possession of an assignee, as in these cases, must be listed and taxes paid on it is, in effect, to hold that the creditors must be taxed twice on the same value. While the legal title to the property is in the assignee, it is so only for the purpose of facilitating the settlement of the trust. Equitably, the property is vested in the creditors. Every dollar paid in taxes by the assignee reduces by that amount the dividend which the creditors' will receive. That it is the duty of creditors, under the law, to list their claims as creditors, admits, we suppose of no doubt, and, we submit, that it is no answer to say that creditors cannot know the value of such credits. Such condition attaches to a very large proportion of credits held by the commercial, and especially the mercantile, world. Nor, is it any answer to say that, as matter of fact, they will not list the claims. No good reason why they should not exist, unless it would be furnished by arequirement compelling the assignee to *268 do so. A statutory construction which, to use the languageof Judge Cooley, “requires that one person, or any one subject of taxation, shall directty contribute twice to the same burden, while other subjects of taxation belonging to the same class are required to contribute but once,” is to be avoided, because, in the judgment of that author, it is duplicate taxation, and is not permissible under a constitution which requires equality and uniformity. This proposition seems to be applicable to the present eases, as our constitution requires both equality and uniformity. It is not necessary to hold that the legislature might not include assignees in the class of trustees who are required to list property in their hands, even though duplicate taxation results; it is enough, for the disposition of the present cases, if the purpose to do so has not been expressed.
The assignee is, in every essential particular, an officer of court. The fund is in his hands as such, and he is bound to do with it just what the court directs. The fund, therefore, is really in the custody of the court, and, as before stated, the beneficial interest is in the creditors. They cannot, 'it is true, receive their own at once, but that is because it requires some time to reduce the assets to money, and for the adjustment of the debts and claims. To require the listing of any of the property thus held by the assignee, and the payment of taxes on it, would manifestly interfere with the orderly execution of the trust. And if, as is claimed in argument, in case payment of taxes so levied is not voluntarily made by the assignee, distraint might be resorted to by the tax collector, and the property seized and taken forcibly from *269 the possession of the assignee, thus taking it from the control of the court, so much the moré apparent is it that the construction claimed by the defendant in error is inadmissible because it would result in unreasonable interference with the rightful exercise of authority by the probate court. It cannot have been the purpose of the legislature, by one statute to lodge exclusive jurisdiction and dominion over property in a court, and, by another statute, authorize a taxing officer to cast contempt upon the court by ousting its jurisdiction, and overriding its powers.
If the clause of section 2734, relating to the listing of trust property by trustees, requires a listing of property by the assignee of an insolvent whose estate is being settled in the probate court, no reason can be given why the same duty would not devolve upon receivers of partnerships, clerks of courts, sheriffs or master commissioners, as to funds which may chance to be in tlieir hands on the day preceding the second Monday of April, subject to payment upon order of court. To state such a proposition is to refute it. And this because it is unreasonable to assume that, in the absence of express authority, the duty to list embraces property which the law has taken into its own hands simply to collect and distribute, and of which it has designated a temporary trustee for the better accomplishment of its work.
Our conclusion is that neither by the constitution, nor by the statute, when construction is given to all the sections bearing upon the subject, is it made the duty of an assignee of an insolvent whose estate is being settled in the probate court, to list the property so held by him for taxation.
*270 Authorities bearing one way or the other upon the question are not abundant. But the conclusions here announced are fully supported by decisions in two well-considered cases, one by the Supreme Court of Pennsylvania and one by the Supreme Court of Connecticut. School Directors v. Rathvon, 30 Pa. St., 533; Brooks v. Hartford, 61 Conn., 112. The Connecticut case is especially apt because their statute designating property subject to taxation, and the duty of trustees regarding the same, appears to be substantially similar to our own upon those subjects.

The judgments of the circuit court toill be reversed and those of the common pleas affi/nned.